UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:10-78-JMH-12

UNITED STATES OF AMERICA,                                      PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                              & RECOMMENDATION**

DEMARCUS HAMILTON JONES,                                      DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

On October 21, 2013, Defendant, Demarcus Hamilton Jones, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and a supporting memorandum.  [Rs. 669, 669-1].  The United States filed its response on April 18, 2014. [R. 716].  Defendant filed a reply on June 30, 2014. [R. 736].  Consistent with local practice, the matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, the undersigned RECOMMENDS that Defendant's Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

I.  BACKGROUND

On June 15, 2010, Defendant was charged by indictment with one count of conspiracy to distribute five grams or more of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and § 846, and one count of distribution of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), in violation of 26 U.S.C. § 841(a)(1).  [R. 1 at

2-3, 15].   The grand jury issued a superseding indictment on August 19, 2010, but it did not materially alter the charges against Defendant.   [R. 151 at 2, 10].   During Defendant's initial appearance and arraignment in this District, Lucas Joyner was appointed as defense counsel pursuant to the Criminal Justice Act. [R. 230].   Soon after Defendant's initial appearance, the grand jury returned a second superseding indictment, but, once again, it did not materially alter the charges against Defendant.   [R. 243 at 2, 9-10].   Subsequently, the court conducted a second arraignment to address the new charges.  [R. 258].

A few weeks later, Defendant appeared in court for a change-of-plea hearing.  [R. 317]. At the hearing, Defendant stated that he had read his plea agreement, but he requested additional time to "read it again."  [R. 354 at 4].  Following an approximately hour-long recess, Defendant agreed to plead guilty to one count of conspiracy to distribute five grams or more of cocaine base (Count 2 of the second superseding indictment) and one count of distribution of cocaine base (Count 20 of the second superseding indictment).  [R. 317].  Subsequent to his rearraignment, Defendant filed a motion to withdraw his guilty plea, arguing that counsel had pressured him into pleading guilty [R. 350], which the court denied, [R. 355].

Prior to sentencing, defense counsel filed a sentencing memorandum challenging Defendant's status as a career offender under the United States Sentencing Guidelines and asserting that the court should sentence Defendant to the mandatory minimum because of his limited involvement in the drug conspiracy.  [R. 436].  At sentencing, the district court rejected the arguments in Defendant's sentencing memorandum and sentenced him to 262 months' imprisonment with 8 years of supervised release to follow.  [Rs. 450, 481 at 8-13].  Defendant's sentence was at the low end of his advisory guideline range of 262-367 months.  [R. 481 at 8-13].

After judgment was entered against Defendant, he filed a notice of appeal with the Sixth Circuit Court of Appeals. [R. 463]. On appeal, Defendant challenged the district court's decision not to allow him to withdraw his guilty plea, his designation as a career offender, and the reasonableness of his sentence. See United States v. Jones, 489 F. App'x 57 (6th Cir. 2012). The Sixth Circuit affirmed Defendant's conviction and sentence. Id.

Defendant now brings the instant motion seeking to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. [R. 669]. Since Defendant is a pro se movant, the undersigned will liberally and leniently construe his arguments. See Franklin v. Rose, 765 F.2d 82, 85 (6th Cir. 1985) ("[A]llegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction.") (citation and internal quotation marks omitted).

## II. STANDARD OF REVIEW

Generally, a prisoner has a statutory right to collaterally attack his conviction or sentence. Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) ("[B]oth the right to appeal and the right to seek post-conviction relief are statutory rights . . . ."). For a federal prisoner to prevail on a 28 U.S.C. § 2255 claim, he must show that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

If the movant alleges a constitutional error, he must establish by a preponderance of the evidence, Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings." Watson, 165 F.3d at 488 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)). If the movant alleges a non-constitutional error, he "must establish a fundamental defect which inherently results in a

complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." Id. (internal quotation marks omitted).

In the present case, each of Defendant's grounds for relief falls under an overarching theory of ineffective assistance of trial counsel.  To prevail on an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1994).  First, in order to prove deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance . . . ." Id.  Second, Defendant must establish prejudice by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694-95.  In the context of a guilty plea, the prejudice element is only satisfied when defendant shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Significantly, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance/prejudice] inquiry 'if the defendant makes an insufficient showing on one.' "  Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004) (quoting Strickland, 466 U.S. at 697).  With these standards in mind, the undersigned will now address Defendant's claims.

### III. ANALYSIS

Essentially, Defendant's memorandum in support of his § 2255 motion consists of two general claims presented under two headings, each of which falls under a predominating theory

of ineffective assistance of trial counsel:  (1) counsel failed to fully inform him of the facts of his case and his options during the plea process, and (2) counsel failed to challenge the use of Defendant's prior attempted-murder conviction to classify him a career offender under the sentencing guidelines.  [R. 669-1 at 12-17].  In the first couple of pages following Defendant's first major heading, he presents a rapid-fire string of claims relating to his plea-process argument, [R. 669-1 at 3-5], some of which he argues further in the later pages of his memorandum and some of which he does not.  In the latter pages of his memorandum, under his second heading, Defendant presents several arguments pertaining to his prior convictions.  [R. 669-1 at 12-17].

It is apparent to the undersigned that Defendant's two major argument headings house numerous subclaims that are not always presented linearly and are best suited to individual discussion.  In keeping with this Court's policy of liberal construction of pro se pleadings, the undersigned has endeavored to connect the various fragments of arguments dispersed through Defendant's motion into several discrete, cohesive allegations of error.   To that end, the undersigned will break Defendant's two major headings into numerous subheadings and address each argument in turn.

## A. Ineffective Assistance of Counsel During the Plea Process

The undersigned discerns seven distinct allegations of error concerning ineffective assistance of counsel during the plea process.  They are paraphrased as follows:  (1) counsel did not adequately explain the criminal charges and their elements to Defendant; (2) counsel failed to apprise Defendant of the application of federal sentencing guidelines and statutory sentencing; (3) counsel failed to show Defendant discovery materials before trial; (4) counsel failed to sufficiently investigate and prepare for the case; (5) counsel made no effort to seek a plea

agreement that did not involve cooperation; (6) counsel coerced Defendant into pleading guilty; and (7) counsel failed to advise Defendant that he could plead guilty without a plea agreement. Each allegation will be addressed, in turn, below.

   1.   *Explanation of Criminal Charges*

Defendant asserts that his guilty plea was not knowing and voluntary because trial counsel failed to explain the criminal charges against him and the elements of the particular offenses charged. [R. 669-1 at 4, 10-11].  The Sixth Circuit has held that, "[a]t a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." United States v. Valdez, 362 F.3d 903, 909 (6th Cir. 2004) (citations omitted).

Defendant's trial attorney has submitted an affidavit asserting that he did, in fact, discuss Defendant's criminal charges with him.  [R. 771-1].  In the affidavit, counsel states that he discussed the criminal charges with Defendant on the day of his initial arraignment, mailed a letter to Defendant informing him of  the nonmaterial changes to the charges contained in the superseding indictment, and again conferenced with Defendant prior to his second arraignment to ensure that he understood the charges.  [R. 771-1 at ¶ 8].  Counsel attached a copy of the letter he sent to Defendant to his affidavit.  [R. 771-1 at 7].

In his reply, Defendant does not specifically contradict counsel's claims regarding their pre-arraignment meetings and the mailing of a letter, but instead asserts a general allegation that trial counsel lied in his affidavit about the total number of times that the two met and the number of phone discussions they had.  [R. 736 at 3].  Defendant asserts that the two only met four or five times and that they only spoke on the telephone ten times.  [R. 736 at 3].  Further, in making his claim that counsel failed to properly explain aspects of the case such as the criminal charges, Defendant focuses on the short amount of time he had to review the plea agreement.  [R. 736 at

4] (claiming Defendant did not have time to read the plea agreement until he received it in open court during his rearraignment).

However, Defendant's claim fails because the statements he made during the Rule 11[1] plea colloquy in open court belie his allegation that counsel did not inform him of the criminal charges against him. The essential elements of the crimes charged against Defendant were set forth in the government's plea agreement. [R. 319 at ¶ 2, 3]. During Defendant's rearraignment proceeding, as part of the Rule 11 colloquy, the district court inquired whether Defendant had read the proffered plea agreement. [R. 354 at 4]. Defendant indicated that he had, in fact, read the agreement but requested additional time to read it once more. [R. 354 at 4]. Following a recess, defense counsel explained that Defendant had some questions about the agreement but that the two of them had resolved those issues. [R. 354 at 4-5].

Continuing with the rearraignment proceeding, the court discussed counts 2 and 20 in detail. [R. 354 at 11-12]. Additionally, it required the United States to discuss the facts and essential elements of each count, [R. 354 at 14-17], and verified that Defendant believed the government could prove the essential elements of each count, [R. 354 at 17]. By his own admission, Defendant understood the terms of the plea agreement and the nature of the charges described therein.

Further, notwithstanding his claim that he did not have enough time to review the plea agreement, Defendant averred that he was satisfied with counsel's representation and that he understood the terms of his plea, including the criminal charges against him. Defendants are generally bound by the statements made during a Rule 11 colloquy. See, e.g., United States v. Todaro, 982 F.2d 1025, 1030 (6th Cir. 1993) ("Where the court has scrupulously followed the

---

[1] "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." United States v. Vonn, 535 U.S. 55, 62 (2002).

required [Rule 11] procedure, the defendant is bound by his statements in response to the court's inquiry."); Warner v. United States, 975 F.2d 1207, 1212 (6th Cir. 1992) (stating that defendant's "decision to lie to the district court cannot amount to prejudice").  Accordingly, the undersigned concludes that Defendant has failed to prove prejudice on account of counsel's alleged failure to explain the criminal charges against him.

    2.   *Explanation of Sentencing Exposure, Guidelines, and Statutory Sentencing*

Defendant next argues that his attorney was ineffective because he did not fully explain Defendant's sentencing exposure, the application of federal sentencing guidelines, and the process of statutory sentencing under 18 U.S.C. § 3553.  [R. 669-1 at 4].  In response to this claim, trial counsel submitted an affidavit stating that he informed Defendant, by telephone and letter, of the different sentencing guidelines Defendant would face were he to plead guilty or, in the alternative, be found guilty at trial.  [R. 771-1 at ¶ 10].  Additionally, counsel attached a letter he sent to Defendant that specifically delineated the guideline ranges that would likely apply to Defendant if he were found guilty at trial rather than entering a plea agreement.  [R. 771-1 at 8] (explaining that Defendant's guideline range would be 360 months to life imprisonment were he to be found guilty at trial and 262 to 327 months were he to plead guilty and receive an acceptance-of-responsibility reduction).

Returning to Defendant's argument, he does not suggest that the Rule 11 colloquy with respect to the sentencing guidelines was inadequate.  Significantly, "the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel."  Gleason v. United States, No. 2:08-cv-969, 2010 WL 1629943, at *14 (S.D. Ohio Apr. 20, 2010) (citations omitted).

Here, the district court advised Defendant that the probation office would prepare a presentence report ("PSR") that would establish his advisory guideline range.  [R. 354 at 10]. The district court also advised that, prior to the issuance of the PSR "no one can know with certainty as to what your advisory guideline range will be."  [R. 354 at 10].  Further, the court required the United States to describe the guidelines-sentencing process to Defendant. [R. 354 at 6-8].  The United States made it clear to Defendant that he could be sentenced to a term of imprisonment as great as life imprisonment on Count 2 and thirty years on Count 20.  [R. 354 at 6-7].

Defendant's reply does not dispute that he received a letter from counsel outlining his potential guidelines ranges.  Further, even if counsel had failed to adequately explain Defendant's sentencing exposure or had inaccurately predicted Defendant's guidelines range, the maximum penalties faced and the unknowable nature of the guidelines range prior to the issuance of the PSR were explained to Defendant in open court.  Thus, the Rule 11 colloquy conclusively demonstrates that Defendant did not suffer prejudice from counsel's alleged failure to explain Defendant's sentence exposure or the application of the sentencing guidelines.  See Gleason, 2010 WL 1629943, at *14.

Defendant has also failed to prove that he received ineffective assistance on the basis of counsel's alleged failure to explain the statutory-sentencing process and the 18 U.S.C. § 3553(a) factors.  Section 3553(a) requires the district court to consider a list of factors in determining a Defendant's sentence.  At Defendant's sentencing hearing, the district court considered § 3553(a) factors such as the nature and circumstances of the offense, the characteristics of the defendant, and the need for the sentence, based upon seriousness, respect for law, and deterrence.  See 18 U.S.C. § 3553(a)(1)-(2).  In fact, the court expressly noted the drug-related nature of the offense,

Defendant's issues with alcohol abuse and anger management, and the need for a sentence that would adequately punish Defendant based on the seriousness of his crimes.  [R. 481 at 28-29].

Here, Defendant fails to elucidate any concrete objections to the § 3553(a) factors considered by the district court, nor does he point to any specific, additional § 3553(a) factor counsel should have challenged or how consideration of that factor could have made a difference in his sentence.  Thus, Defendant has failed to show any prejudice from counsel's alleged failure to explain the § 3553(a) factors to him during the plea process.  See United States v. Sweet, 281 F. App'x 1, at *4 (D.C. Cir. 2008) (unpublished decision) (explaining that there is no ineffective assistance of counsel or need for an evidentiary hearing when the district court considers some of the § 3553(a) factors and the § 2255 movant fails to show how any particular factor could have made a difference in his sentence).

Nonetheless, Defendant asserts that the mere fact that he filed a Motion to Withdraw his Guilty Plea, [R. 350], confirms that counsel failed to make him aware of his sentencing exposure, [R. 669-1 at 8].  However, Defendant cites no authority for this proposition.  In any event, Defendant is barred from attempting to relitigate the district court's denial of his guilty-plea-withdrawal motion because the Sixth Circuit has already affirmed the district court in that regard on Defendant's direct appeal.  See Jones, 489 F. App'x at 60 ("The district court did not abuse its discretion by denying Jones's motion to withdraw his plea."); see also, e.g., Holmes v. United States, 281 F. App'x 475, 479 n.3 (6th Cir. 2008) (quoting DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996); Giraldo v. United States, 54 F.3d 776, at *2 (6th Cir. 1995) (unpublished opinion) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law.") (citation omitted); United States v. Henderson, No. 09-cr-

11-JMH-CJS, 2013 WL 2325125, at *3 (E.D. Ky. May 28, 2013) (citations omitted). Consequently, the undersigned finds no merit in Defendant's ineffective assistance arguments pertaining to counsel's alleged failure to explain his sentencing exposure, the guidelines, and the statutory-sentencing process.

### 3. Review of Discovery Materials

Defendant's next claim is that trial counsel was ineffective for failing to explain the discovery materials in the case against him. [R. 669-1 at 4]. Defendant offers no factual support for this claim. He has simply alleged, in the vaguest of terms, that his attorney did not explain the discovery materials to him. Without more information, Defendant cannot possibly prove deficient performance or prejudice as required by Strickland's test for ineffective assistance of counsel. See Strickland, 466 U.S. at 688-690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

Further, the record shows that the magistrate judge entered an order on discovery, requiring that the United States, in response to Defendant's requests, provide, to the extent possible, all discovery and imposing that requirement on the prosecution on a continuing basis. [R. 231 at 1-2]. Following the magistrate judge's order, defense counsel filed a written request for discovery on October 19, 2010. [R. 238]. Counsel's affidavit states that he spent at least three hours reviewing discovery with Defendant on November 5, 2010, [R. 771-1 at ¶ 9], and Defendant's reply does not dispute that this meeting occurred. Additionally, at sentencing, the government stated that it had, in fact, provided discovery to Defendant's counsel. [R. 481 at 22, 33]. Even more, counsel argued for a lighter sentence for Defendant on the basis of information ascertained from discovery materials. [R. 481 at 14-15] ("He was not fully involved into the

conspiracy based on the review of discovery until January or February of 2010."). Even assuming that Defendant had not seen those materials beforehand, he fails to show how he was prejudiced; he has alleged no facts that would show additional discovery materials even existed, much less that those materials would have compelled him not to plead guilty. For this reason, Defendant's ineffective assistance claim pertaining to discovery fails.

### 4. *Investigation and Preparation for the Case*

Next, Defendant alleges trial counsel was ineffective because he would not investigate the case or "hire investigators or experts to diligently defend Movant." [R. 669-1 at 5]. However, Defendant fails to point to any exculpatory facts or plausible theories investigators or experts could have provided to counsel. Thus, the undersigned cannot find that counsel's decision not to hire an investigator or expert demonstrates prejudice. See Hill, 474 U.S. at 58-59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.").

Defendant has not explained what information an investigator or expert could provide that would have persuaded counsel to recommend going to trial. Consequently, this claim is not entitled to further consideration.[2]

---

[2] Additionally, in his reply brief, Defendant argues that counsel failed to properly investigate an error in his federal indictment. [R. 736 at 4]. Specifically, Defendant asserts that he never pulled his vehicle in front of a house at 821 Horton Drive in Paris, Kentucky. [R. 736 at 4]. Instead, he asserts that he "pulled up four homes down the street at 829 Horton Drive." [R. 736 at 4]. For this reason, he claims his counsel should have sought to have his indictment dismissed.

The Sixth Circuit has consistently held that arguments made for the first time in a reply are waived. E.g., Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010) (citing Am. Trim, LLC v. Oracle Corp., 383 F.3d 462, 477 (6th Cir. 2004). Consequently, the undersigned finds that Defendant has waived his indictment-address argument. At any rate, the Horton address is not actually mentioned in any of Defendant's indictments. [Rs. 1, 151, 243]. In actuality, it is used in Defendant's plea agreement. [R.

*5. Plea Agreement Without Cooperation*

Defendant next argues that his attorney was ineffective for not attempting to secure a plea agreement that did not involve cooperation.  [R. 669-1 at 4-5].  However, the failure to negotiate a different plea agreement may be characterized as trial strategy that does not constitute ineffective assistance of counsel.  See United States v. Calderon, 163 F.3d 644, 646 (D.C. Cir. 1999) (holding that counsel's decisions regarding the details of a plea agreement are "well within the realm of valid strategic decisions of competent counsel").  Further, Defendant has not pointed to any authority holding that the failure of counsel to negotiate a different or better plea agreement amounts to a deviation from reasonable professional assistance.  Counsel's actions in securing a plea agreement are presumed effective, see Strickland; 466 U.S. at 690, and Defendant has provided no evidence that counsel's work securing a plea agreement was anything other than sound trial strategy.  Thus, Defendant has failed to prove deficient performance.

Further, Defendant has put forth no evidence that the government would have negotiated a different plea agreement with him, nor has he shown that this hypothetical, different plea agreement would be more favorable to him than the one negotiated by counsel.  Thus, Defendant has also failed to prove prejudice under Strickland.  See Williams v. United States, No. 1:05-CR-270, 2008 WL 59979, at *2 (W.D. Mich. Jan. 3, 2008) (finding no ineffective assistance on basis of counsel's failure to negotiate different plea agreement where petitioner failed to show that government would have entered into another agreement or that it would have been beneficial to him).  As Defendant has failed to show deficient performance and prejudice, his plea-agreement-cooperation claim must fail.  Strickland, 466 U.S. at 687.

*6. Coercion to Enter Plea Agreement*

---

319].  Further, Defendant has failed to allege how he was prejudiced by the use of the allegedly incorrect home address in the plea agreement.  For all these reasons, Defendant's wrong-address argument fails.

Defendant argues that counsel provided ineffective assistance by coercing him into signing a plea agreement.  The only specific allegations Defendant makes regarding his attorney's conduct (apart from those already addressed by the Court, i.e. not seeking an agreement without cooperation, not explaining the case to him, etc.) are that counsel misguided him by stating that, if he failed to enter a plea agreement, the government would file additional charges, the government would seek a life sentence, and counsel "would withdraw being that he was not prepared for a trial."  [R. 669-1 at 11].

Here, pursuant to the terms of Defendant's plea agreement, the government agreed that, so long as Defendant did not violate any part of the agreement, the government would not initiate any additional federal charges.  [R. 319 at ¶ 13].  The record reveals that this was no hollow concession by the government.  In fact, Defendant faced the very real possibility that the government could charge him for firearms and trafficking violations during a period of time he was a fugitive on a federal warrant.  [R. 481 at 23] (prosecutor explaining additional uncharged conduct stemming from when Defendant "was on the run, he was still trafficking in drugs, he was still involved with firearms"); [R. 771-1 at ¶ 6] (trial counsel noting "the United States' insistence that it would seek further charges relating to gun possession and further drug activity while the Defendant was avoiding arrest and prosecution in the underlying case, if the Defendant sought to invoke his constitutional right to a jury trial).  Thus, counsel's advice to enter a plea agreement rather than incur additional federal charges could appropriately be described as professionally reasonable rather than coercive.

At any rate, during the plea hearing, the court informed Defendant of the constitutional rights he was waiving by pleading guilty and the government presented the essential terms of the plea agreement.  Further, the court asked several questions to ensure that Defendant was

14

voluntarily and knowingly entering a guilty plea. First, the court ensured that Defendant understood the terms and conditions of the plea agreement as they were read in court. [R. 354 at 9]. Then the court engaged Defendant in the following colloquy:

> Court: Has anyone made any promises or assurances to you different from those that are set out in the plea agreement?
>
> Defendant: No, sir.
>
> Court: Has anyone in any way attempted to force you to plead guilty?
>
> Defendant: No, Your Honor.

[R. 354 at 9-10].

Thus, the record refutes Defendant's coercion claim. That is to say, the record demonstrates that Defendant was competent, understood his plea agreement, and was not coerced into signing it. His sworn statements were "[s]olemn declarations in open court," which "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also e.g., Warner, 975 F.2d at 1212 (stating that defendant's "decision to lie to the district court cannot amount to prejudice"). As a result, Defendant's claim that his counsel coerced his guilty plea is without merit.

7. *Pleading Guilty Without a Plea Agreement*

Defendant criticizes trial counsel for the advice he gave concerning Defendant's options once he was presented with the plea agreement proposed by the government. According to Defendant, he was told by counsel that he had two options—"either plead guilty according to the AUSA's plea agreement terms or go to trial and get the maximum term allowable." [R. 669-1 at 5]. Defendant acknowledges that counsel advised him that taking the matter to trial was not a good option. [R. 669-1 at 4]. He criticizes counsel, however, for not advising him of a third option, that of pleading guilty without a plea agreement. Defendant argues that, by pleading

15

guilty without a plea agreement, he could have challenged PSR factors weighing against him, argued for a discretionary sentence under United States v. Booker, 543 U.S. 220 (2005)[3] and § 3553(a), moved for a downward departure based on his alleged minor role in the drug conspiracy, and sought a downward departure on the basis that his criminal history category substantially over-represented the seriousness of his criminal history.  [R. 669-1 at 4-5].

The record reveals that, trial counsel did, in fact, lodge several objections to Defendant's PSR during sentencing, but they were rejected by the district court.  [R. 481 at 2-13].  Further, although Defendant's counsel did not specifically request a downward departure on the basis of his allegedly minor role in the drug conspiracy, he did argue for the mandatory minimum on those grounds.  [Rs. 436 at 4-5, 481 at 13-16].  Additionally, Defendant's claim that his attorney could have successfully argued for a discretionary sentence or a downward departure on account of a substantially over-represented criminal history is belied by the district court's observation at sentencing that Defendant's category six criminal history was "just an awful criminal history." [R. 481 at 28].

Defendant's counsel advised him to take a plea agreement that resulted in him avoiding additional drug and firearms charges.  The additional firearms charges would likely have resulted in at least an additional five-year minimum sentence under 18 U.S.C. § 924(c).[4]  Further, the government recommended a sentence at the bottom of the applicable range.  [R. 481 at 24].

---

[3] Booker held that the sentencing guidelines are advisory rather than mandatory.  543 U.S. at 245. "Under the post-Booker framework, the district court is empowered with *greater discretion* to consider the factors provided in 18 U.S.C. § 3553(a) in determining a proper sentence."  United States v. Barnett, 398 F.3d 516, 528 (6th Cir. 2005) (emphasis added).

[4] § 924(c)(1) prohibits using, carrying, or possessing a deadly weapon in connection with "any crime of violence or drug trafficking crime."  The minimum prison term for a § 924(c) offense is five years, § 924(c)(1)(A)(i), in addition to "any other term of imprisonment imposed on the [offender]," § 924(c)(1)(D)(ii).  See Abbott v. United States, 562 U.S. 8, 12 (2010) (explaining the application of § 924(c)).

Notably, trial counsel was able to secure this deal despite Defendant's steadfast refusal to cooperate with federal authorities.

Defendant has provided no reason for this Court to second guess the wisdom of counsel's advice to enter into a plea agreement. In fact, this appears to be precisely the type of advice an effective attorney would offer under the circumstances. Defendant benefited greatly from the plea agreement secured by trial counsel; thus, he has not shown deficient performance. See Hunter v. United States, 160 F.3d 1109, 1115 (6th Cir. 1998) (finding no deficient performance where petitioner could have been exposed to lengthier sentence had he not agreed to plea agreement). Nor has Defendant shown prejudice where the record indicates that he would have faced at least an additional five years' imprisonment had he gone to trial. The simple fact of the matter is that no objective or reasonable person in Defendant's shoes would have found the risk of pleading guilty without a plea agreement to be acceptable. This issue is wholly without merit.

B. Ineffective Assistance of Counsel for not Challenging Defendant's Prior Convictions

Defendant argues that his counsel was ineffective for failing to investigate or file motions contesting the use of his prior conviction for attempted murder relied upon by the court in enhancing his sentence pursuant to 18 U.S.C. § 851, finding him to be a career offender under U.S.S.G. § 4B1.1, and determining that he was an armed career criminal under 18 U.S.C. § 924(e)(1), the Armed Career Criminal Act ("ACCA").[5] In making this argument, it appears that

---

[5] Defendant also briefly seems to argue that he was erroneously convicted of attempted murder in state court and that counsel was ineffective for failing to challenge his erroneous conviction. [R. 669-1 at 13] ("Even the conviction was erroneous in this event if you must see that no one was murdered or hurt but only shot at by Movant"). The central tenet of Defendant's argument in this regard is that his attempted-murder conviction was improper because the state-court indictment listed Kentucky's murder statute, KRS 507.020, which does not reference attempted murder. In fact, Kentucky has a separate statute for criminal attempt, KRS 506.010. Although Defendant's attempted-murder indictment did not include reference to KRS 506.010, it clearly stated that Defendant was charged with attempted murder, rather than murder. [R. 669-3 at 2] ("[D]efendant committed the offense of Attempt to Commit Murder, when he, with intent to cause the death of Franch Myers, fired a 32 caliber revolver at him."). At any rate, a defendant cannot use a § 2255 proceeding to challenge the validity of prior state convictions that

17

Defendant, at times, conflates the ACCA with the career-offender guidelines.  The record reveals that the government never sought to have Defendant sentenced as an armed career criminal. Thus, trial counsel could not possibly have erred by not challenging Defendant's prior conviction in relation to the ACCA.  Notwithstanding this fact, and out of leniency toward Defendant's pro se argument, the undersigned will proceed to address Defendant's contentions as though they are meant to challenge his attempted-murder conviction as it relates to the career-offender guidelines rather than the ACCA.

   *1. Challenge to Convictions Used in § 851 Information*

   Defendant alleges that trial counsel was ineffective for failing to pursue pretrial motions challenging certain criminal convictions outlined in the government's 18 U.S.C. § 851 information.  [R. 669-1 at 8].  By way of background, the government filed an information pursuant to 21 U.S.C. § 851(a)(1) stating that it would rely upon two prior drug-related convictions of Defendant in support of an enhanced sentence.  [R. 275].

   Defendant's threadbare allegation is silent on how a challenge to the prior convictions contained in the information would have been successful.  The burden is on Defendant to show he was prejudiced by counsel's deficient performance, and he has not so much as attempted to meet this burden.  See Holnagel v. Kropp, 426 F.2d 777, 779 (6th Cir. 1970) ("[T]he burden on the Appellant to establish his claim of ineffective assistance of counsel is heavy.").  Thus, the Court cannot possibly find that Defendant received ineffective assistance on this ground.

   Further, both of the convictions contained in Defendant's § 851 information appear to have occurred "more than five years before the date of the information alleging such prior

---

were used to enhance his federal sentence.  Smith v. United States, 262 F.3d 537 (6th Cir. 2001); Turner v. United States, 183 F.3d 474 (6th Cir. 1999).  Thus, Defendant cannot possibly show that he was prejudiced by his counsel's decision not to challenge his attempted-murder conviction on the basis of the statute listed on the indictment.

conviction," and, therefore, were not subject to challenge.  21 U.S.C. § 851(e) (prohibiting collateral attack of defendant's prior convictions if they occurred more than five years before the information was filed); United States v. Hill, 142 F.3d 305, 313 (6th Cir. 1998) ("[S]ection 851(e) prohibits collateral attack of defendant's prior convictions, which occurred five years before the information was filed."); [R. 275] (stating that Defendant's conviction in case number 96-CR-00008 occurred on October 8, 1996 and that his conviction in 96-CR-00080 took place on February 11, 1997).  Because Defendant's convictions were not even subject to challenge, Defendant was not prejudiced by counsel not filing a pretrial motion to challenge them.

At any rate, § 851 addresses increases to a statutory sentence, not a guidelines calculation, and the government ultimately decided against seeking statutory enhancements. Jones, 489 F. App'x 57, 62.  Since Defendant was sentenced under the guidelines without any statutory enhancements, § 851 had no bearing on his sentence.  Id.  Consequently, Defendant was not prejudiced.[6]

2. *The District Court's "Categorical Approach" to Defendant's Prior Convictions*

"A defendant qualifies as a career offender for sentencing purposes if, inter alia, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance."  United States v. Wood, 209 F.3d 847, 849 (6th Cir. 2000) (citing U.S.S.G. § 4B1.1). Defendant argues that counsel was ineffective for failing to challenge the classification of his attempted-murder conviction as a "crime of violence" for sentencing purposes.  [R. 669-1 at 13].

The sentencing guidelines define a "crime of violence" to wit:

---

[6] It is worth noting that, although trial counsel did not file a pretrial motion challenge the convictions laid out in the § 851 information, he did in fact file a sentencing memorandum challenging certain aspects of the inclusion of Defendant's prior drug convictions in the determination of his career offender status under U.S.S.G. § 4B1.1.  [R. 436].  In light of the foregoing explanation that the government did not actually seek statutory enhancements, counsel's decision to challenge Defendant's guidelines sentence, rather than the irrelevant § 851 information, was objectively reasonable.

> [A]ny offense under federal or state law punishable by imprisonment for a term exceeding one year that-(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).  Further, the commentary states:

> "Crime of violence" includes *murder*, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extensions of credit, and burglary of a dwelling.  Other offenses are included as crimes of violence if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its very nature presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).  Significantly, " '[c]rime of violence' include[s] the offenses of aiding and abetting, conspiring, and *attempting to commit such offenses*."  Id. (emphasis added).

Therefore, under a plain reading of the commentary, attempted murder qualifies as a "crime of violence."  See Jones, 489 F. App'x at 62.  For this reason, the Sixth Circuit, on Defendant's direct appeal, held that "[h]is attempted murder conviction unquestionably qualifies as a 'felony conviction of . . . a crime of violence' under U.S.S.G. § 4B1.1(a)."  Id.  Accordingly, Defendant's ineffective assistance claim pertaining to counsel's decision not to challenge the use of the attempted-murder conviction in his career-offender determination should be rejected.  See, e.g., Holmes, 281 F. App'x at 479 n.3 (quoting DuPont, 76 F.3d at 110; Giraldo, 54 F.3d, at *2 (6th Cir. 1995) (unpublished opinion) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law.") (citation omitted); Henderson, 2013 WL 2325125, at *3 (citations omitted).

Furthermore, in addition to his attempted-murder conviction, Defendant's career-offender status was also predicated upon two prior controlled-substance offenses.  [R. 449].  Defendant has not challenged counsel's assistance with respect to those prior convictions in his § 2255 motion.  Thus, even if this Court believed that Defendant's attempted-murder conviction should not have counted toward his career-offender status, Defendant's drug convictions would, nonetheless, qualify him as a career offender.  Wood, 209 F.3d at 849 (citing U.S.S.G. § 4B1.1) (explaining that a defendant is determined to be a career offender when he has two prior felony convictions for crimes of violence or controlled substances offenses).  Consequently, Defendant has not shown how he was prejudiced by counsel's decision not to challenge the attempted-murder conviction.

Notwithstanding the above-described reasons why Defendant's ineffective assistance claim pertaining to his career-offender status must fail, Defendant argues that his counsel was ineffective for failing to challenge the court's use of the "categorical approach" in its analysis of his prior attempted-murder conviction.  [R. 669-1 at 15].  Defendant asserts that his counsel erred by not moving for the court to use the "modified categorical approach" to determine whether his attempted-murder conviction could be used to classify him as a career offender.   Further, Defendant asserts that had the court employed the "modified categorical approach," it would have discovered that his attempted-murder conviction should not have factored into his career-offender determination because it was not a "felony conviction of . . . a crime of violence" as required under U.S.S.G. § 4B1.1(a).  [R. 669-1 at 13-14].  Putting aside the fact that the undersigned (following Sixth Circuit precedent) has already determined that attempted murder is, in fact, "a crime of violence" under the guidelines, the Court will proceed to address Defendant's argument for the sake of his understanding.

When determining which crimes meet the definition of "a crime of violence" for purposes of the career offender guidelines, federal courts typically use the "categorical approach." United States v. Covington, 738 F.3d 759, 762 (6th Cir. 2014) (citing United States v. Ford, 560 F.3d 420, 421 (6th Cir. 2009)). The "categorical approach" focuses on the statutory elements of the defendant's prior convictions rather than the "particular facts underlying [those] convictions." Descamps v. United States, 133 S. Ct. 2276, 2283-87 (2013).

However, there are a "narrow range of cases" where the sentencing court will have to look beyond the statutory elements to effectuate the categorical approach because the statute includes "alternative elements." Id. at 2283-84 (citing Taylor v. United States, 495 U.S. 575, 602 (1990)). Put another way, when a statute that served as the basis for a defendant's prior conviction is "divisible," meaning that the statute "comprise[d] multiple, alternative versions of the crime," the sentencing court may need to look beyond the statutory elements because "[n]o one could know, just from looking at the statute, which version of the offense [the defendant] was convicted of." Shepard v. United States, 544 U.S. 13, 17 (2005). The act of looking beyond the elements to determine which particular statutory phrase served as the basis for the prior conviction has been termed the "modified categorical approach." Descamps, 133 S. Ct. at 2284.

Kentucky's murder statute is, in fact, a "divisible" statute. See KRS 507.020(1). KRS 507.020(1)(a) defines intentional murder, while KRS 507.020(1)(b) defines wanton murder. However, "the Kentucky Penal Code does not recognize Attempted KRS 507.020(1)(b) Wanton Murder as a criminal offense because there is no such criminal offense as an attempt to achieve an unintended result." Holland v. Commonwealth, 114 S.W.3d 792, 795 n.2 (Ky. 2003) (citations and internal quotation marks omitted).

Because there is no such thing as attempted wanton murder in Kentucky, it is clear that Defendant was convicted of attempted intentional murder. This being the case, there was absolutely no reason for counsel to challenge the trial court's "categorical" approach to Defendant's attempted murder conviction.

For this reason, the undersigned is not convinced by Defendant's argument that the Sixth Circuit's holding in Jones v. United States, 689 F.3d 621 (6th Cir. 2012)[7] mandates a different result. [R. 669-1 at 14]. In Jones, the Sixth Circuit ruled that a defendant's prior conviction for reckless homicide under Kentucky law did not qualify as a violent felony under the ACCA. Id. at 626. The Jones holding was based on the idea that a mens rea of recklessness would not satisfy the "use of physical force" clause of the ACCA.[8] Id. Here, Defendant's prior attempted-murder conviction was based on intent rather than recklessness. See KRS 506.010; 507.020. Therefore, Jones's holding is inapplicable to the present situation.

At any rate, and as explained above, attempted murder is an enumerated "crime of violence" under the commentary to U.S.S.G. § 4B1.2. See Jones, 489 F. App'x at 62. Thus, it does not particularly matter whether Defendant's attempted murder conviction would not satisfy the "use of physical force" clause of § 4B1.2. The conviction would still qualify Defendant as a career offender; therefore, he was not prejudiced by counsel's decision not to challenge the attempted-murder conviction on the basis of the court's "categorical approach."

---

[7] In order to avoid confusion, the undersigned notes that Jones v. United States, 689 F.3d 621 (6th Cir. 2012) involved a different defendant and is unrelated to the instant matter. By coincidence, Defendant's direct appeal was also heard in 2012. United States v. Jones, 489 F. App'x 57 (6th Cir. 2012).

[8] Although Jones's holding was in consideration of the ACCA, it also applies in the context of the career-offender guideline because both statutes employ the "use, attempted use, or threatened use of physical force" definition of crime of violence or violent felony. United States v. Rede-Mendez, 680 F.3d 552, 555 n.2 (6th Cir. 2012). Further, "[g]iven the similarity between the ACCA's definition of 'violent felony' and the definition of 'crime of violence' contained in the pertinent guideline provision, courts, including this one, have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other." United States v. Vanhook, 640 F.3d 706, 712 n.4 (6th Cir. 2011).

### 3. *Kentucky's Violent Offender Statute*

In another argument against the use of his attempted-murder conviction to classify him as a career-offender, Defendant contends that his attempted murder conviction is not a violent crime under Kentucky's violent offender statute. [R. 669-1 at 12-13]. The implication of this argument is that, if attempted murder does not qualify under Kentucky's violent offender statute, it cannot be considered "a crime of violence" under U.S.S.G. § 4B1.1(a). However, as explained above, the Sixth Circuit held that Defendant's attempted-murder conviction "unquestionably qualifie[d]" as a crime of violence under § 4B1.2(a)(1). <u>See</u> <u>Jones</u>, 489 F. App'x at 62. And this issue is not relitigable. <u>See, e.g.</u>, Holmes, 281 F. App'x at 479 n.3 (quoting <u>DuPont</u>, 76 F.3d at 110); <u>Giraldo</u>, 54 F.3d, at *2 (unpublished opinion) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law."); <u>Henderson</u>, 2013 WL 2325125, at *3 (citations omitted).

Furthermore, Defendant misses a critical point. Attempted murder is an enumerated "crime of violence" under the guidelines. <u>See</u> U.S.S.G. § 4B1.2 cmt. n.1. The federal guidelines do not distinguish between the degree of offenses or their classification under state law. <u>See</u> <u>Taylor</u>, 495 U.S. at 590-92 (concluding that sentencing enhancements depend on federal definitions and noting that there is a general presumption against interpreting federal criminal laws so as to make their application dependent upon state law). Defendant's argument that attempted murder is not a "crime of violence" is, therefore, meritless.

### 4. *The Applicability of Alleyne*

Although his specific claim is not clearly identifiable, Defendant appears to argue that his counsel was ineffective for not mounting a challenge to the use of his prior convictions based on

24

the United States Supreme Court's holding in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013). [R. 669-1 at 10-11].  However, <u>Alleyne</u>'s holding does not impact Defendant's conviction or sentence in this matter.

<u>Alleyne</u> involved the mandatory minimum sentences available for the crime of carrying or brandishing a firearm set forth in 18 U.S.C. § 924(c).  <u>Id.</u> at 2155-56.  Under that statute, using or carrying a firearm in relation to a crime of violence carries a five-year mandatory minimum sentence, while brandishing a firearm carries a seven-year mandatory minimum.  18 U.S.C. § 924(c)(1)(A); <u>see</u> <u>Alleyne</u>, 133 S. Ct. at 2155.  The <u>Alleyne</u> defendant was convicted by a jury of violating § 924(c), but the jury did not determine whether he brandished the firearm or merely used or carried it.  <u>Alleyne</u>, 133 S. Ct. at 2156.  This led the district court to decide, at sentencing, that the defendant brandished the firearm and, therefore, the lengthier, mandatory sentence applied.  The Supreme Court, relying on the authority of its decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), reversed and held that any fact that, by law, increases the penalty for a crime is an element of the offense and must be tried by a jury.  <u>Alleyne</u>, 133 S. Ct. at 2163.

It is difficult to surmise from Defendant's brief how exactly he thinks <u>Alleyne</u> applies in the instant matter.  He was not charged with a 924(c) violation—he avoided additional firearms charges by virtue of his plea agreement with the government.  Further, to the extent that he might be arguing that the prior convictions that qualified him as a career-offender under the guidelines are elements of an offense under <u>Alleyne</u>, he is mistaken.  In fact, the Sixth Circuit has squarely rejected this argument.  <u>United States v. Cooper</u>, 739 F.3d 873, 884 (6th Cir. 2014) (holding that <u>Alleyne</u> does not apply to application of the career offender guidelines because the guidelines "merely advise a district court how to wield its discretion," and "<u>Alleyne</u> dealt with judge-found

facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range."). This being the case, Defendant's <u>Alleyne</u> argument is not entitled to further consideration. Thus, the undersigned has considered each of Defendant's claims and found them to be without merit.

## IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel, 529 U.S. 473, 484 (2000)</u>; <u>see Miller–El v. Cockrell, 537 U.S. 322, 335–38 (2003)</u> (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); <u>see Bradley v. Birkett, 156 F. App'x 771, 774 (6th Cir. 2005)</u> (noting requirement of "individualized assessment of ... claims") (citing <u>Porterfield v. Bell, 258 F.3d 484, 487 (6th Cir.2001)</u>).

Here, Movant is not entitled to a certificate of appealability because no jurist of reason would find the Court's conclusions debatable or wrong. The record conclusively shows that Defendant's pleas were knowing and voluntary, and not the product of ineffective assistance of counsel. Furthermore, Defendant simply cannot show that her attorney's performance during plea negotiations or at sentencing was deficient.

## V.  RECOMMENDATION

Having considered the matter fully, and for the reasons stated above, the undersigned RECOMMENDS that the District Court DENY Defendant's motion for 28 U.S.C. § 2255 relief.

[R. 669]. The undersigned also RECOMMENDS that the District Court DENY a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition, issued under subsection (B) of the statute. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004). Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

Signed April 8, 2015.



Signed By:
Edward B. Atkins
United States Magistrate Judge